(35 Misc. Rep. 768.)

### GRANT v. BIRRELL.

(Supreme Court, Trial Term, New York County. September, 1901.)

**1. FOREIGN JUDGMENT—JURISDICTION OF COURT—EVIDENCE.**

That the high court of justice of the province of Ontario, in the dominion of Canada, is a court of original jurisdiction, is established by the giving in evidence of a book purporting to be the last revision of the statutes of the legislature of the province, and containing the judicature act, establishing the jurisdiction of its high court, identified by a solicitor of the province as issued officially by the queen's printer.

**2. APPEARANCE—EFFECT—OBJECTIONS TO JURISDICTION.**

A resident of the state of New York was served within its boundaries by a writ of the high court of justice of the province of Ontaria, Canada. He appeared in said court by attorneys, who objected to the jurisdiction, and served a general denial, and interposed an affirmative defense, raising the question of jurisdiction. *Held*, he thereby waived objection to jurisdiction of his person, and cannot, in order to defeat an action subsequently brought in the state of New York upon the judgment rendered against him, after trial had upon the merits, raise the question of jurisdiction.

Action by Charles H. A. Grant against George S. Birrell. Judgment for plaintiff.

Henry Brill, for plaintiff.

Albert Zimmermann (David Gerber, of counsel), for defendant.

RUSSELL, J. The plaintiff seeks to recover upon a Canada judgment. The defendant claims a want of jurisdiction of the Canadian court, both of the subject-matter and the person of the defendant. The Canadian record, given in evidence, shows the original writ to have been issued the 27th of August, 1895, at London, in the province of Ontario, dominion of Canada, and was in its body directed to George S. Birrell, of the city of New York. It is indorsed upon its return as follows:

"Within writ was served by me, George Morehead, on George S. Birrell, the defendant, on Thursday, the 5th day of September, 1895.

"Indorsed the 5th day of September, 1895.

"George Morehead, 403 Greenwich Street, New York City, N. Y."

The next paper of the record is entitled in the action, and reads as follows:

"Enter an appearance for the defendant, George S. Birrell, in this action, subject to defendant's objection to the jurisdiction of this honorable court to entertain this action, which defendant raises in the pleadings by order.

"Dated the 23d day of September, A. D. 1895.

"Gibbons, McNab & Mulkern, Defendant's Solicitors, London.

"The said defendant requires a statement of claim to be delivered."

The statement of claim follows, and is similar in substance to our form of complaint. It avers the payment for the defendant of $1,382.85 as the cost of an unsuccessful litigation in the high court of justice for Ontario. The next paper on the record is a statement of defense which contains a general denial, an affirmative defense, an averment that the defendant was a resident of the city of New York, and that the contract set forth in the statement of claims was

outside the jurisdiction of the court. The last paper in the pleadings was a general joinder of issue by the plaintiff upon the statement of defense. The final proceeding, as appeared by the record, is the judgment given the 20th of March, 1897, which recites that the action had been tried before Mr. Justice Armour; that he ordered judgment to be entered for the plaintiff for $1,382.85 and interest, and adjudged that the plaintiff recover from the defendant $1,567.75, with $180.56 costs.

The defendant urges that the existence of the high court of justice of Ontario must be proven as a fact, and also that its legal authority derived from the legislature of the province of Ontario to exist and act as a court of justice, with the scope of its jurisdiction statutorily defined, must be shown by the proper legislative enactments, and that such evidence has not been given in this case. A book appearing and purporting to be the last revision of the statutes of the legislature of the province of Ontario was given in evidence, and identified by a witness, who had been solicitor in that province, and practicing as such, as issued officially from the queen's printer. I think the apparent authority for the issuing of the book, contained within itself, and the testimony of Solicitor Cooper, sufficient to authenticate the exhibit as evidence of the enactment by the legislature of Ontario of the judicature act contained in the Revised Statutes, establishing the jurisdiction of the high court of justice. Code Civ. Proc. § 942; Hecla Powder Co. v. Sigua Iron Co., 157 N. Y. 437, 52 N. E. 650. But, were there technical objection to this proof as inadequate for the purpose, are the eyes of justice so blinded that the court of original general jurisdiction in the state of New York cannot see the existence of a similar court of a friendly power exercising its jurisdiction in a land divided from this state by a merely mathematical line? No hint is given by the defense that this court may not recognize the fact that there is a dominion of Canada, and a province of Ontario within it, which dominion and province are supplied with usual governmental agencies. This court must presume that methods for the administration of justice surely prevail in that dominion and province, and that some court of general jurisdiction exercises the usual power to determine legal controversies. Is it a step beyond the vision of our own court to see the name of that other court, evidence being given that the court of original jurisdiction in Canada, which sits for the hearing of controversies, so acts under the name of the "High Court of Justice"? Would it not be humiliating to acknowledge that our judiciary, the members of which have known from childhood the existence in England and its dependencies of the king's bench and chancery division, should not be supposed to know as judges, with the added wealth of knowledge from years of advocacy and judicial investigation, that there were in reality such courts, and that, in following the example of the wise legislation of the state of New York, the parliament of England had combined law and equity proceedings in one forum, which reform extended also in fact and in provincial legislation to our neighbors at the North, who form an integral part of the British empire?

A few pertinent authorities on this subject are referred to. We recognize judicially the existence of the different foreign states and their seals. Schoerken v. Swift & Courtney & Beecher Co., 19 Blatchf. 209, 7 Fed. 469. Also the organization of the forms of government of the dominion of Canada. Calhoun v. Ross, 60 Ill. App. 309. We can take notice of the names and functions of those courts of other nations which exist for the establishment and protection of ordinary rights. Dozier v. Joyce, 8 Port. 303. The public acts and proclamations of the Spanish and French governments while holding the territory of Louisiana may be judicially recognized. U. S. v. Reynes, 9 How. 127, 13 L. Ed. 74. Reference to the public documents in Florida before it was annexed to the United States may be judicially had without their being given in evidence. Coffee v. Groover, 123 U. S. 1, 8 Sup. Ct. 1, 31 L. Ed. 51. Special and peculiar creations by governmental power for the enforcement by judicial authority of unusual proceedings against individuals, or to establish the status of property, may well be beyond the ken of judicial recognition in other countries, except so far as proper proof brings their power and action within the presumptions accorded to judicial action. It is only necessary here to recognize the certainty that a court of ordinary general jurisdiction must exist in the province of Ontario, and that a court which acts with the usual adjuncts pertaining to such a tribunal may be identified by the name it bears. There is therefore no merit, either upon the proof or judicial presumption, in the objection that the general power of the high court of justice of Ontario, Canada, has not been sufficiently established.

But the defendant also says that no jurisdiction was ever gained by the Canadian court of his person. Beyond doubt, the service of an original precept to institute an action, which might thereafter be prosecuted to a hostile judgment, cannot be served without the jurisdiction of the court from which it issued, so as to bind the defendant beyond the territory in which that writ may have some effective power, solely by operation of legislation which is binding within the territorial jurisdiction of the legislature. Hence the defendant here need have paid no attention to the service upon him in the city of New York, and a judgment upon such service, even if the Canadian court was willing to enter one, could have had no effect beyond the province of Ontario. If that service might endanger any property of the defendant within the province of Ontario, he had his election to defend or leave that property to be disposed of under the power of the courts which are rightfully presumed to administer justice, and which had jurisdiction of such property as he left behind within their jurisdiction. In the courts of our own state no judgment can be entered without personal service of the summons or personal appearance of the defendant, unless proof is made of the presence of property within the state which execution may reach. But the defendant made his election to willingly enter the controversy to which he was invited in the court of Canada. He knew that success upon the merits, after a trial there, would forever bar his antagonist from further litigation against him upon that cause of action. The case was duly tried, and the claim of the plaintiff against the defend-

ant established in the former's favor, presumably after a fair trial. Choosing, as he did, the course he was to pursue, can defendant now say that he is more favorably placed than his antagonist, in that the judgment is no bar against him, while a contrary decision would have released him forever? Can the defendant make a general appearance for the purpose of a broad contest upon the merits, and still reserve the right to insist that he was not properly brought within the forum of the contention,—a right to be exercised only in case of defeat upon the merits? Such a privilege would be unjust to the court as well as the suitor. It is not the law. Submission of the merits to the adjudication by the court is also a submission to the consequences and conclusions that follow the judgment of the court which judgment the defendant has willingly invited. A defendant who voluntarily appears and answers, though the answer in terms reserves the right to object to the jurisdiction of the court, is precluded from objecting that the court did not acquire jurisdiction of his person. Mahaney v. Penman (Hoffman, J., concurred in by Oakley, C. J., and Duer, J.) 4 Duer, 603. A notice of appearance after a denial of a motion to set aside service of a summons upon a defendant who was served while a witness gives the court general jurisdiction of the person. Woodruff v. Austin, 16 Misc. Rep. 543, 38 N. Y. Supp. 787. A general appearance gives jurisdiction even where there was no property in the state, and defendant was served only by publication. Reed v. Chilson, 142 N. Y. 152, 36 N. E. 884; Christal v. Kelly, 88 N. Y. 286.

It is not necessary to consider here the question which so vexed the supreme court of the United States in Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95,—how fully the defendant must plead in an action within this state, or the extent of the proof he must give, to show that the judgment record of the foreign jurisdiction should be opened for investigation here on account of fraud or gross partiality, because this defendant did not upon this trial challenge in any form an investigation into the merits of the claim merged in the Canada judgment.

The expression in the statement of defense that an order was made allowing the defendant to enter an appearance without prejudice to his right to object to the jurisdiction of the court is not sustained by any proof of an order allowing him to answer and contest upon the merits without subjection of his person to the usual power of the court. The presumption would rather be, if there was any order in the terms referred to by the answer, that as to the person the defendant was willing to submit to the decrees of the court, but that he wished to preserve any objection to its general jurisdiction.

Judgment is directed in favor of the plaintiff for the amount claimed and costs.

Judgment for plaintiff, with costs.