No. 19,694.

THE WETMORE STATE BANK, *Appellee,* v. R. J. COURTER and AMANDA E. COURTER, *Appellees,* and N. RASMUS et al., *Appellants.*

SYLLABUS BY THE COURT.

1. OPENING JUDGMENT—*When New Summons Unnecessary.* On the filing of a petition to open a judgment it is not necessary to issue a new summons to a defendant who had permitted the judgment to be taken against him by default.

2. SAME—*General Appearance Waives Summons.* Rule followed that summons is not necessary when a voluntary general appearance is entered.

3. APPEARANCE—*What Constitutes a General Appearance.* A general appearance is entered by a defendant, (*a*) when he files a motion to make plaintiff's petition more definite and certain; (*b*) when he joins in a stipulation that plaintiff may have further time to amend his petition; (*c*) when files a general denial; (*d*) when he files an answer to the cross-petition of his codefendant.

4. AMENDMENT TO PLEADINGS—*Judicial Discretion.* Rule followed that the allowance or refusal to allow amendments to pleadings is within the sound discretion of the trial court.

5. MORTGAGE FORECLOSURE—*Venue Where Land is Situated.* A foreclosure action is properly brought in the county where the land is situated, and the grantee of the mortgaged land who had assumed and agreed to pay the mortgage is a proper party defendant in such action.

6. SAME—*Evidence—Contents of Deed—When Record May be Impeached.* When upon due demand a defendant, grantee of a tract of land, is unable or unwilling to produce the deed conveying the title to him, secondary evidence of its contents is admissible although the record of the register of deeds shows a purported copy of the deed, it being the contention of the demandant that the register's record is an inaccurate copy of the original deed.

7. VERDICT—*May be Received by Attorney by Agreement.* Rule announced in *The State v. Keehn,* 85 Kan. 765, 118 Pac. 851, that by agreement of the litigants and with the approval of the trial judge in open court, the verdict of the jury may be received by a designated attorney in the absence of the trial judge, followed and applied.

Appeal from Kearny district court; GEORGE J. DOWNER, judge. Opinion filed February 12, 1916. Affirmed.

*Guy L. Hursh,* and *E. R. Sloan,* both of Holton, for the appellants.

*R. F. Hayden,* and *George P. Hayden,* both of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: In June, 1911, R. J. Courter had a real-estate transaction with N. Rasmus whereby Courter conveyed to Rasmus a quarter section of Kearny county land subject to a mortgage for $1000, which Rasmus assumed and agreed to pay, in exchange for a house and lot in the city of Wetmore subject to a mortgage for $800, which Courter assumed and agreed to pay. The mortgage on the Kearny county land, which had been executed by Courter and wife, was held by The Wetmore State Bank. This mortgage was permitted by Courter and Rasmus to mature without payment, and the bank brought suit in the Kearny county district court to foreclose its mortgage and for a personal judgment against Courter and to bar Rasmus of his junior and inferior interest in the property.

Personal service of summons was obtained through the sheriff of Nemaha county upon all the defendants, they being residents of that county. Courter answered, not denying his liability to the bank, but pleading his conveyance to Rasmus, and that for a valuable consideration Rasmus had agreed to pay the mortgage, and prayed for a personal judgment against his codefendant, and that if a personal judgment were obtained by plaintiff against Courter and Rasmus the property of the latter be first subjected to the satisfaction of the plaintiff's judgment.

Aside from this answer no appearance was made by either defendant at the trial, and the plaintiff, upon evidence, sub-

mitted his cause and obtained judgment according to his prayer.

Some months later Courter filed a petition to vacate the judgment, showing sickness and other good excuse for his and his attorney's nonappearance at the trial. The plaintiff bank answered, confessing the allegations of the petition to vacate, and consented to open the judgment. The defendant Rasmus had no notice of this petition. The court found the allegations of the petition to be true, and on June 19, 1913, set aside the judgment.

The plaintiff then amended its petition, repeating all of its original allegations, but enlarging as to Rasmus, and pleading the conveyance by Courter to Rasmus by the deed of 1911, whereby Rasmus assumed and agreed to pay the mortgage, and praying for a personal judgment against both defendants.

Following this a new summons was issued and served on the defendant Rasmus and his wife, requiring them to answer on or before October 15, 1913.

On October 13, 1913, Rasmus and wife filed a motion asking that plaintiff be required to make its petition more definite and certain; on November 14, 1913, Rasmus and wife joined in a stipulation, filed November 26, 1913, that plaintiff might have twenty days in which to further amend its petition; and on December 13, 1913, the defendants Rasmus and wife filed their answer in which they denied generally, and denied that the deed from Courter to Rasmus contained any provision binding Rasmus to assume and pay the mortgage. On the same day Rasmus and wife filed an answer to the same effect against Courter's cross-petition. Thereafter, when court convened in February, 1914, Rasmus and wife asked and obtained leave to file a motion to vacate the order of June 19, 1913, setting aside the original judgment, because they had no notice and were not served with summons in that proceeding. This motion recited that they appeared "specially for the purpose of this motion." The motion was overruled. Then Rasmus and wife asked leave to amend their answer to include an additional defense, to wit, the matters leading up to the first judgment, and alleging the same to be a final adjudication and still in full force and effect. This leave to amend was denied. A motion to the same effect and praying dismissal was likewise filed and overruled.

The cause was then tried, and the jury in answer to a special question found that the deed of the Kearny county land from Courter to Rasmus contained a recital that Rasmus assumed and agreed to pay the mortgage. From this judgment Rasmus and wife appeal, assigning several errors which will be noticed as we proceed.

1. We do not perceive any error in overruling appellants' motion to set aside the order vacating the original judgment. True, no summons was issued, but the only party who could complain was the bank which had prevailed in the original judgment. Summons is unnecessary when voluntary appearances are made. (*Bury v. Conklin,* 23 Kan. 460.) And as the cause proceeded after the original judgment was vacated, these appellants made repeated general appearances before their special appearance was presented. (*Abercrombie v. Abercrombie,* 64 Kan. 29, 67 Pac. 539.)

2. Neither does any error appear in the court's denial of appellants' motion for leave to amend their petition. Aside from the general rule that the allowance or denial of amendments is ordinarily within the sound discretion of the trial court (*Bank v. Badders,* 96 Kan. 533, 536, 152 Pac. 651), the amendment sought to be made was a mere recital of the earlier steps of the litigation.

3. The motion that appellants should be permitted to go hence alleged that the original judgment was still in full force and effect contradicted the record and was properly denied. We see no point to appellants' contention that the action, one in foreclosure and its incidents, was wrongly brought in Kearny county, nor in the contention that the court had no jurisdiction. (Civ. Code, § 48.) When Rasmus assumed and agreed to pay the mortgage, he contracted to place himself on exactly the same footing as the original obligor, his codefendant Courter, and in Kearny county where the land was situated, not in Nemaha county where all the litigants resided, was the proper forum. Is there fair ground for a distinction as to the venue in a foreclosure case where the land lies in one county and all the litigants reside in another? Or shall it be said that in such a situation the lawsuit must be divided and the foreclosure end of it tried where the land lies and that the breaches of covenant incidental thereto must necessarily be tried in the county where the parties reside? We think not.

But even if Rasmus could have avoided a personal judgment by staying out of the Kearny county district court, he did not stay out. (*N. M. R. R. Co. v. Akers*, 4 Kan. 453, syl. ¶ 4.) His appearance was general; he appeared and filed a motion that plaintiff be required to make its petition more definite and certain; he joined in a stipulation giving plaintiff more time to amend its petition; he filed a general denial to plaintiff's petition; he filed an answer to his codefendant's cross-petition. These were all general appearances, and all entered and filed before any of his special pleas and exceptions to the jurisdiction.

4. Exception is taken to the admission of testimony that Courter's deed to Rasmus contained a recital that Rasmus, the grantee, assumed and agreed to pay the mortgage. Formal demand had been made on Rasmus to produce the deed. It was not forthcoming. It was then competent to admit secondary evidence. True, it would have been the proper and perhaps the better practice first to have introduced the record of the register of deeds, as the statute makes it primary evidence with the same effect as the original deed. But even then the original deed must prevail over the register's record if there is a conflict. Moreover, the obvious purpose of the statute is merely to avoid the necessity of explaining the absence or nonproduction of the original deed where its contents are not in dispute, and can not relate to an issue arising on the accuracy of the register's record. Here the crux of the case depended on whether the register's record was an accurate copy of the original deed. The original deed was in the control of Rasmus. He could not or would not produce it. Therefore Courter's secondary evidence was admissible, and indeed the admission of such testimony was the only way to avoid a palpable miscarriage of justice. It might also be observed that the register's record was later introduced, so the matter descends to a question of the order of presentation of evidence, which ordinarily is hardly so important as to jeopardize the judgment. We do not understand it to be the contention of counsel that secondary evidence of the contents of the original deed could not have been introduced under any circumstances merely because the register's record purported to be a true copy of the original. (Civ. Code, § 369.)

Bank v. Courter.

5. One more question is presented. The case was in the hands of the jury on the evening of February 3, and the district judge had to leave in order to open court in Finney county next morning. It was agreed by the parties that a local attorney, A. R. Hetzer, Esquire, of the Kearny county bar, might receive the verdict; that he might permit the jury to separate in case they did not reach a verdict by midnight, and that he might reconvene them for further deliberation. Mr. Hetzer permitted the jury to separate about 11:30 p. m., and reconvened them at 9 a. m. the following day, and the jury returned a verdict about 11:30 a. m. on February 4. At that time the district judge was holding court in Finney county, having convened court there that forenoon about 9 o'clock a. m.

Appellants make no excuse for this repudiation of their agreement, and cite *Cox v. The State, ex rel.,* 30 Kan. 202, 2 Pac. 155, and *In re Millington, Petitioner, etc.,* 24 Kan. 214. But it was clearly pointed out by this court in *The State v. Keehn,* 85 Kan. 765, 118 Pac. 851, that by consent of the parties and with the approval of the trial judge in open court, the verdict of a jury may be received by a designated attorney in the absence of the judge. This whole subject was there treated comprehensively, and the views therein set forth will be followed here. Until the legislature shall otherwise decree, the tendency to lay aside antiquated artificialities when no prejudice is done to substantial rights is likely to continue. The fair agreement under which this verdict was received did not affect the appellants' subtantial rights; and since justice seems to have been the result of this lawsuit and no prejudicial error appears in the case, the judgment is affirmed.